Good morning. May it please the court. Gretchen Nelson on behalf of the plaintiffs and the appellants. I think it's fair to say that the facts of this case are known to many in this courtroom irrespective of this lawsuit. This case arises out of a fire on the Conception, a dive boat that was off the shore of Santa Barbara near the Channel Islands that burned with 39 people on board, killing 34 and injuring one. And as often occurs after a tragedy like this, changes were implemented. Those changes were done through Congress. Changes that were statutory as well as regulatory. Those are not at issue here today. But there's another change that we believe is critical for this court to consider. The families of the victims filed lawsuits against the government under the Suits and Admiralty Act, a statute enacted by Congress in 1920 and amended in 1960. That statute is essentially Congress's recognition that it is going to waive immunity without exception for lawsuits that may be brought against the United States as well as lawsuits that the United States can bring. It's a statute that is the essential sue and be sued statute. There is no language in the Suits and Admiralty Act carving out an exception for discretionary functions. And in fact, the Federal Tort Claims Act, which does include the discretionary function exception, excludes lawsuits brought under the Suits and Admiralty Act. The language of the Suits and Admiralty Act is very simple. In a case in which if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in Admiralty could be maintained. A civil action in Admiralty, in personam, may be brought against the United States. Or, and I think this is significant, a federally owned corporation so under the SIAA, Congress made very clear, we're not going to carve out an exception and we're going to make it apply, not just to the United States, but to any federally owned corporation. The same type of corporation that was in issue in the Thacker case issued by the United States Supreme Court in 2019. There, the court held that the Tennessee Valley Authority Act, another sue and be sued act, which did not carve out an exception for discretionary function, and the Supreme Court said, after the District Court and the Court of Appeal read the discretionary function exception into that act, that that was wrong. There is no basis for implying the discretionary function exception into a statute, either like the Tennessee Valley Authority Act or the Suits in Admiralty Act, where Congress never intended it in the first place. As this court is well aware, the starting point for this case is to give respect to what Congress intended when they wrote it. There are historically many significant aspects of the Suits in Admiralty Act that were different from the TVA Act, among them, the fact that the federal tort claims act was enacted in the 1940s. And as Congress decided to amend the Suits in Admiralty Act in 1960, 14 years later, and never incorporated an exception for discretionary function. Okay, Counsel, so what's your response to the argument that, well, Thacker is different because that does involve a private, a federally owned corporation versus here, in this case, which is the federal government? The fact that the TVA was a federally owned corporation is meaningless. It doesn't make any difference to the facts and the interpretation that the court has to address. The SIA did not carve out an exception. And the United States Supreme Court in Thacker said, we don't read that into it. Congress, if it wants to waive immunity without exception, has the right to do that. And the fact that it was a quasi-corporate entity in the TVA is meaningless. Among other things, as I just mentioned, the Suits in Admiralty Act itself makes clear that it applies without exception, both to the United States as well as to any federally owned corporation. Yeah, the argument is almost stronger in the SIA because it's very clear, whereas in TVA, it's sue and be sued, which requires some interpretation, right? And it has implied exceptions and things of that nature. That's correct. The Thacker itself reflects a distinction because Thacker didn't conclude that there could be no discretionary function exception. And indeed, it appeared to recognize the possibility when it's in connection with governmental activities of a kind not typically carried out by private parties. And so the decision was ultimately to remand to the lower courts to figure out whether this was the TVA in the same capacity as a private corporation supplying electricity or functioning as a governmental agency. And I think the distinction is relevant here. In this case, what's alleged to be the deficient action of the Coast Guard isn't its actions as a private vendor. It wasn't running the boat. It's its actions as a regulator. So I'm not sure I understand how Thacker doesn't maintain the same kind of distinction that's been asserted by the government here. Because, Your Honor, in Thacker, what the court made very clear is trying to import the discretionary function exemption, which is broader than what the court in Thacker undertook to review, ultimately, and remanded to the district court for further consideration. The discretionary function exception captures so much, and I think this court has probably struggled with any number of cases under the FTCA where it addresses that. All the court in Thacker said is that under separation of powers principles and under a strict textual reading of the statute, you cannot read discretionary function exception into it. What the court ultimately came around to in Thacker is a recognition that the federal housing authority and Burt case that was a U.S. Supreme Court case from some years before recognizes that in certain instances that where, for example, there may be an implied exception that can be considered in certain circumstances where there is a, quote, clear showing of a grave impediment into governmental function. That is far different from the discretionary function exception that is written into the Federal Tort Claims Act. And I think the significance is important for this court because we never should be getting to the question here of whether the Coast Guard is given a pass for its regulatory failures in this case under the DFE. Whether or not on remand the district court should consider the question of whether or not there is a clear showing of a grave undermining of governmental functions is a different standard than what we are presented here today with the DFE. You acknowledge that what the Coast Guard is being, you're attempting to hold the Coast Guard liable for, was activities in the form of government activity, of regulatory activity, as distinguished from being the operator of a ferry, for example. Yes, absolutely, Your Honor. There is no question about that. I'm not sure I understand how, I mean, it may well be that the separation of powers articulation results in something that's not exactly equivalent to the discretionary function exception, but I don't understand how Thacker removes the discretionary function exception intended to protect the government as regulator from the equation. The issue becomes simply the language of the statutes. The federal tort claim statute and graphs in it express language for discretionary functions. That language has been interpreted by this court in any number of cases. The Thacker opinion, and in that opinion, the Supreme Court made very clear, you can't take that language, that provision, that element of a statute, and take it and put it over into the suits of the TVA Act, where it never existed. So that all of the body of law that has developed under the discretionary function exception would not apply. All the court in Thacker said is that separation of powers will not permit it. Textual, strict reading of the text of the statute will not permit it. And in the event that there is some concern that there may be some grave interference with governmental function, their courts could look to an implied exception from the Burr case. I'm curious, the way I read Thacker is that Burr only comes to play when you're using the specific language of sue and be sued, because this court has recognized a sued and be sued clause might contain implied exceptions. In this case, we don't have a sued and be sued clause, we just have a very broad waiver of sovereign immunity. So the way I read Thacker is that all of that discussion is irrelevant to this case. I would agree with the court. I think that it is fair to say that there are concerns that can be expressed, and Judge Clifton has eloquently expressed them. The government is performing a regulatory function when it is inspecting vessels, that regulatory function is mandated by statute, as well as regulations. And there can be, viscerally, as well as a well-expected concern that second-guessing the government may not be appropriate. And setting aside the validity or the invalidity of that, the point, Judge Bumate, that you're saying is correct. You look at what the statute is. If Congress in 1920 and in 1960 decided they were waiving immunity across the board, our job, your job, is to read that as it is written. And as it is written, it makes clear there's not an exception. There's not an exception, certainly, for discretionary function. And while you may want to graft on some sort of implied exception to countenance what might be concerns over imposing liability on the government, the best you can do, potentially, would be, as the dissent, Judge Ludig in McMillan said, you could address this under a political question doctrine. You could address it in that context and say, okay, in this particular case, this case, we're not going to address as judges because we do not have the ability to, because it really is a congressional branch. That's one way to handle it. The other way is to potentially expand the BRRR, which in the BRRR case, that was the Federal Housing Authority, which, again, was a quasi-corporate entity or quasi-governmental entity, corporate entity, and take that implied restriction. But that implied restriction is a high bar, as Justice Kagan stated in Thacker. And certainly, I don't believe that has been met here, but even at a minimum, the case should be remanded to the district court for further proceedings. I know my time is short, and I would like to turn briefly to the question of the issue of the discretionary function exception, which was applied by the court in dismissing the case. And in this case, we believe very strongly that the actions of the statutory mandates that are all outlined in our briefs and in the government's brief, there were a multitude of regulations, regulations addressing things like plastic trash cans, which, as the record reflects, was the source of the fire that the government proved in the criminal case against Captain Boylan. There were plastic chairs that should not have been there, and there were electrical deformities. What the Coast Guard, and I understand this, this is a case like no other, and there is no person out there that wants to be the person accepting responsibility for what happened. The Coast Guard's concerns, the Coast Guard's defense of their inspectors can be understood in that context. But when you go back to what the statutes say and what the regulations say, the Coast Guard failed, and the case should not have been dismissed under the DFE. That doesn't mean that at the end of the day, the Coast Guard will be found liable. It simply means that there will be a trial on all of the issues and a court finding as to whether or not the Coast Guard failed. And with that, if I could reserve time for rebuttal. We'll give you the time you've got right there, a little over three minutes. Thank you, Counsel. Thank you, Your Honor. May it please the Court, Jill Rosa representing the United States. The District Court correctly ruled that the challenge conduct falls within the discretionary function exception. The United States has not waived its sovereign immunity for this action, and the Court lacked subject matter jurisdiction. We ask that the Court affirm. I'd like to address both prongs of the discretionary function exception. I'd also like to give a brief overview of the Coast Guard's marine safety program. The Coast Guard and its predecessor agencies have spent 180 years designing and implementing a marine safety program. They have a limited number of inspectors. With that limited number of inspectors, they oversee a very large industry. They're overseeing a multi-billion dollar industry. They inspect not just small passenger vessels like in this case, but also cargo ships, large oil tankers, cruise ships. And the overarching principle of the marine safety program is that the burden of compliance always remains on the owner and operator of the vessel. The owner and the operator of the vessel must comply with the minimum safety standards and the regulations, must comply with the terms of the certificate of inspection that allows them to operate. And why is it like this? Because the owner and operator is on that vessel every day. They're sailing the vessel. They're using it. They're seeing what's working, what's breaking. They are there every day. The Coast Guard is there for once a year for an annual inspection, maybe twice a year if there's a hull inspection. So the Coast Guard's visiting for a few hours once a year, getting a snapshot in time of the condition of this vessel on this particular day, while the owner and operator must maintain compliance at all times. So looking at the first prong of the exception, the question for the court to address is whether there is a mandate so specific that the Coast Guard had no option but to adhere to it. And the answer is no. And the way you can look at this is you look at the statute, you look at the regulations, you look at the published manual in this case. The statute is in Chapter 33 of the Shipping Code, 46 USC. It's very broadly worded, telling the Coast Guard, go and create a marine safety program, create minimum safety standards, inspect for it, and that the owners and operators must comply with those standards. It's creating this program. Then you look at the regulations there, if you read them as a whole, especially under subchapter T, telling the owner and operator how this program's going to work. You're going to have an inspected vessel. We are going to inspect you. You have to call and schedule it. We will come and we will check. Here's a way you can appeal if you disagree with what we tell you. It kind of of these minimum safety standards that the vessel has to comply with. So Counsel, I think you have a good argument there, but that's only relevant if the discretionary function exception applies, correct? What is only relevant if the discretionary function exception? The whether or not the regulations provide a mandatory regime to the Coast Guard or to the owners and operators of the boats. Correct. So first we have to decide whether or not the discretionary function exception applies. Yes. Would you like me to address the thacker? Yes, please. Okay. Well, I've been thinking about this a little bit since we filed the briefs, and they didn't raise this issue below. And I know your owners are far more qualified than I am to decide if you want to address an issue that was not raised below. But I point out that this is a very large litigation. There are many parties in related cases. There's a criminal case. There were two cases in federal district court. There's a case in state court with 70 defendants. And the district judge has the job of creating a case management plan that addresses this large multi-party tragic accident lawsuit. And what happened was this case was stayed for a while because of the criminal case. And the district judge wanted to move it along, so he issued a limited removal of part of the stay only to allow the discretionary function exception issue to be resolved. So he lifted the stay for that issue. We did seven months of discovery. We briefed this issue. It's been a year and a half now focused only on that issue. And the reason I question whether you want to address it is because I wonder if the district court's case management plan might have been different if he had known they were going to raise the argument that this whole doctrine of discretionary function should be tossed out. Perhaps he would have asked for additional theories to be raised by the government. Perhaps he wouldn't have opened it to so much discovery. I don't know, but it seems, I don't know if it's the right word, but slightly disrespectful for him to spend all this time adjudicating this case and managing this case as complex litigation than for a new argument to come in at this point. So one ground for you not to even deal with this is it was not raised below. And I do think it's unusual for it to be considered at this point because it's such a dramatic argument and it was available to them before. Thacker is not a new case. Thacker has been around since 2019. So they could have raised this argument below. It might have affected the course of litigation. But I would also say that Earl's case is good law. Can I just a response to your waiver argument? It is a jurisdictional question, right? And so shouldn't we, aren't we always obligated to consider the jurisdictional questions? You do. It's a jurisdictional question. You do have that discretion if you wish to look at it. I'm just pointing out another grounds for why. But to be clear, it's not an Article III jurisdictional question, correct? It's not, it doesn't go to the power of this Court to hear the case. It's whether it's more of a statutory jurisdiction question. Correct. Which we, okay, just so we're talking about the jurisdiction, that word the Supreme Court said means lots of different things. That's right. But continue. So you were mentioning the Earl's case. That's what I was going to ask about. So we've got Earl's. Earl's says it applies. You've got Thacker, which, you know, I can see why they think Thacker and Earl's are not exactly commingling, I guess is the word you use. They're not quite on the same page. Tell me why Thacker is not clearly irreconcilable with Earl's. Because in my mind, that's what this case turns on, is if Earl's is good law, I think you win. If Earl's is bad law, well, then it's tough. And Earl's is the law of the circuit. Earl's is the law, I mean, the Earl's finding is the law of the whole country, of every circuit to have looked at this. It's unanimous at this point. So this would be creating a circuit split. Should the circuit look at it so far. In the Thacker case, I turn to the final page of the Thacker case, that's 139 Supreme Court Reporter 1444, and the court concludes only if the conduct at issue is governmental might the court decide that an implied limit on the sue and be sued clause bars the suit. So first of all, the Coast Guard is not a sue and be sued entity. It is the opposite of a Thacker, if that's possible, because the TVPA had a sue and be sued language, which everyone recognized has implied exceptions, whereas the SIAA is as clear as day that there is no exceptions. So why shouldn't we just apply the text, which is what Thacker is telling us to do? Every court to address this has done so, Your Honor, and it gets into, I believe, most of the 11th Circuit just said that they should consider revisiting their precedent post-Thacker. So post-Thacker, Your Honor, I would say looking at that sentence and what the Supreme Court said, what we're talking about in this case is a governmental function. We are talking about, as the court said, in Varag Airlines, the United States acting as a regulatory body, regulating the conduct of private individuals, and in Varag Airlines, which is remarkably on point, the Supreme Court said, again, it was in the FTCA, but they said this is governmental conduct of the type that the United States has not waived its sovereign immunity. This case is exactly like Varag Airlines. So when you look at Thacker— What was the language in that case? Yes, that was an FTCA case. Oh, so there was statutory command for a discretionary waiver, correct? Yes, under the FTCA, 26 ADA. But when you look at the Thacker case, they're talking about to consider whether it was governmental conduct. So there was an electric utility. They were not doing governmental work at the time. This case is very different in the fact that, in terms of the language of Varag Airlines, the Coast Guard was regulating the conduct of private individuals. They were creating this marine safety program. They are educating mariners. They are licensing standards. They are inspecting for compliance with those standards. This is the type of governmental function that, in Varag Airlines, said the discretionary function exception would apply. What you're arguing—my view is that all that discussion of Burr and that type of grave interference with the government, it only applies when there is a sue-and-be-sued clause, not when there's an express waiver of sovereign immunity. That seems correct to me, Your Honor. Okay. Counsel, let me ask you this. Since Thacker was decided, are you aware of any cases, other than the district court in the 11th Circuit that Judge Bumutate just referenced, are you aware of any published decisions that have really talked about this issue? With respect to the Suits and Amnualty Act? Yes. Only this case in the 11th Circuit, Jones versus something where someone struck a duck blind. Right, right, right. That's the 11th Circuit case that Chief Judge Pryor—it's a very odd procedural position—but he issued a statement basically saying, we may not want to take a look at this again. Other than that case, are you aware of any cases that deal with this issue? No, Your Honor. Okay. It just hasn't—as far as you know, it hasn't come up. It has not come up, and it would be my office that would handle it, so I know there are no more. You would know. Okay, fair enough. So I would like to, I guess, finish concluding Prong 1 and then Prong 2, unless there are other questions on the Thacker issue. All right, binding with respect to Prong 1, when we were looking at whether there's a specific mandate, we look at the statute, we look at the regulations, we look at the manual, none of these place a binding mandate on the inspector in this case to have inspected any particular item, identified any particular item as a violation of the minimum safety standards in the regulation. I would direct, Your Honors, to the Marine Safety Manual in particular, that is the guide that the inspectors use, and you see in their guide, for example, page 580 of the record, the guide gives the inspectors great latitude. So the way the Coast Guard developed this program is to take inspectors and send them to inspector school, they do on-the-job training, they do an apprenticeship program, and then they become fully qualified to inspect a wide variety of vessels. Then the Coast Guard vests them with judgment to use their judgment, use their discretion to go and inspect vessels and look for what's happening on those vessels. And it's not a situation where they have a rote checklist to apply. They are expected to use their discretion and train to use their discretion. I would also like to point out with respect to Prong 1, the complaint itself alleges that the Coast Guard abused its discretion in paragraph 132. So this district judge did a very careful job. He did allow seven months of discovery, but there is actually a facial allegation that the Coast Guard had discretion to issue the certificate at issue here. And I would like to point out the certificate and make sure the Court has looked at the Certificate of Inspection because that's the certificate that plaintiffs are saying this Chief Warrant Officer should not have renewed, should not have issued to them. The Certificate of Inspection can be found at page 627 of the record. And I wanted to point out to the Court that on the face of the Certificate of Inspection, which the master was required to have posted and visible at all times on the vessel, the Certificate of Inspection says that this vessel is good for use as long as the master posts a roving night watch when the bunks are occupied on the vessel. In this case, the master did not do that, but that was one of the terms of the certificate that the Coast Guard issued to him. Turning to the second prong of the analysis is the policy prong. The Court is making an objective, not a subjective analysis. As the Gobert case said, the Supreme Court, you're looking at whether the conduct is susceptible to policy analysis. We're not looking at this actual conduct. We're looking at the type of conduct, the nature of the conduct. Is it policy-type conduct? We're not getting inside this inspector's mind on what he was doing that day. Was he actually balancing policy? No, we're looking in general and at an objective level. The United States is entitled to a presumption on the second prong because we passed the first prong. Because Congress gave the Coast Guard this discretion, because Coast Guard gave the individual inspectors this discretion, we can presume that that was based on policy needs, and therefore, we have a presumption to pass this. And again, I would urge the Court to look at Varig Airlines. That case is remarkably on point with this one in terms of the aviation inspection program, which was mirrored off of the maritime safety program when it was first developed. So you see a lot of similarities between the aviation safety program and the marine safety program. And that case was also allegedly a fire in a trash can that they alleged that the agency should have inspected and should have noticed. And the Supreme Court said that this is exactly the type of conduct that is subject to sovereign immunity, that we have not waived our sovereign immunity for this. We draw the line here. This situation of regulating the conduct of private parties is exactly the discretionary conduct at issue. Two other cases I'd like to point out to the Court that are very similar. The Cassin's case from the Seventh Circuit was a very similar inspection of a vessel. And in that case, the plaintiff said that the Coast Guard inspector missed seeing a handrail on a stairwell. How could he not see it? The handrail would have been there or not there when he went up and down those stairs. It was just negligence of that inspector to miss that handrail. And the Seventh Circuit said, no, this is discretionary conduct. The inspector had discretion whether or not to inspect that handrail and decide whether it was in or out of compliance. That was my question. Is the argument that because it's an inspection and there's no direct command to look at every waste receptacle, that that's why it's discretionary? Because the inspector can decide whether or not to look at this receptacle or not? Is that the basic discretion used here? It is, exactly. They have discretion to, you know, they are trained. They are trained in what is most important and what they want to focus on. But each vessel is different. And they know these operators. And, you know, these are very experienced inspectors. He can go out there and he knows this operator. He knows what issues have been coming up recently. He can decide, I'm going to focus on the bilge pump this time and I'm going to really inspect that. Or he can decide this time I'm going to focus on cable. You know, he has the discretion based on what he sees in front of him, what he's trained to do to focus on what he wants to focus on in that inspection to promote the marine safety program. That is exactly it. And I would also like to point out that this program, it's a partnership. They rely on the industry. The licensed master mariner is required to report to the Coast Guard. If he sees something wrong, he's there for the inspection. He can say we're not complying with code. He can say this is out of code. He's there and they are required at all times to tell the Coast Guard when they are out of compliance. So it's not like a game of gotcha by this inspector. He's there with the operators looking around the vessel, trying to see what needs to be done and what needs to be fixed. He has discretion to figure out what leeway he's going to give them to fix a problem if they spot one. Let's say he says that trash can needs to be replaced, do it within the next year. You know, it doesn't have to be a no-sale order automatically. There's just a lot of judgment discretion given to the Coast Guard to work with these people. And it's 46 U.S.C. 3315 is the statute that places a mandate on the master of this vessel to disclose when the vessel is out of compliance. And that is just a critical part of the marine safety program, that the owner and operator has the burden of compliance and also has to participate in the marine safety program. And if there are no other questions, I will conclude. To conclude, this case is a classic discretionary function scenario and the district court correctly dismissed this action. And we would request that this court affirm. Thank you, counsel. Thank you, your honors. I'd like to just briefly return to the question that I believe is the critical question, and that is whether or not the discretionary function exception should be imported into the Suits and Admiralty Act. And the points that were made by my very esteemed colleague, which related largely to a waiver argument, I think are inept. This is an issue of subject matter jurisdiction. This court is well aware that there can be no waiver of that. Issues of subject matter jurisdiction can be raised by the court, can be raised on appeal, can be raised in the U.S. Supreme Court for the first time. In addition, the issue of Thacker is really an issue of an argument. It's not an issue. The question of whether the discretionary function exception applied in this case was addressed in the district court ad nauseum, at length. And ultimately, the court ruled that the case should be dismissed for lack of subject matter jurisdiction. The fact that we are arguing Thacker in this court is of no moment that that particular case was not raised in the lower court because it is an argument and arguments are preserved. It is issues that can be waived. So there are any number of reasons we've outlined them that there was no waiver here. There may also be some concern that this panel not address the question of Thacker in the context of Earls. As my colleague has pointed out, Earls is good law. That is correct, except where there is intervening higher authority that undermines or cannot be reconciled with the case that's before this court. I do not see how there can be any reconciliation between Earls and Thacker. The distinction that one is a sue and be sued statute as opposed to a statute that says the government can be sued and the government can sue in language that may come from the 1920s. The fact that this case addresses issues that are not related to a federally owned corporation are indistinguishable and not important to the ultimate question that the Supreme Court took up and has been taking up more and more, which is the strict textual adherence to what Congress wrote. In this case, there can be no dispute. Congress in 1920 and again in 1960, 14 years after the FTCA Act was implemented, chose not to carve out any exception for anything in the SIAA. For that reason, you can't make the argument that it's based on separation of powers. I would urge the court to consider the McMillan case from the Fourth Circuit. That is the most recent case addressing whether or not the DFE should be imported into the SIAA. That's an unbanked decision. The Fourth Circuit ultimately concluded they would apply the DFE to the SIAA over very vigorous dissent. And ironically, in that case, in the majority opinion, the court expressly held there is no carve out from the text of the SIAA for the DFE. The only way the court could get there was through an analysis under the separation of powers. And in Thacker, the Supreme Court made very clear that argument will not hold. As the court said, the court is wrong to think, the government is wrong to think that waiving the TVA's immunity from suits based on discretionary functions would offend the separation of powers. As the court explained in Burr, the scope of immunity that federal corporations enjoy is up to Congress. The body has the full power to endow such entity with the government's immunity from suit, and equally, it has the power to waive that immunity. And that is what Congress did in 1920 and again in 1960 in the SIAA. I would urge that the court hold that the DFE does not apply in this case and remand the case to the district court. Thank you. Thank you, counsel. Thanks to both of you for your briefing and argument in an important case. This matter is submitted and we'll move on to the final case for today.
judges: CLIFTON, OWENS, BUMATAY